MERIEM L. HUBBARD, No. 155057
Email: mhubbard@pacificlegal.org
J. DAVID BREEMER, No. 215039
Email: jbreemer@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorneys for Plaintiffs Lyndsey Ballinger
and Sharon Ballinger

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDSEY BALLINGER and SHARON BALLINGER,<br><br>                      Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>                      Defendant. | No. _____<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND CALIFORNIA STATE LAW (Cal. Gov't Code §§ 7060-7060.7)**<br><br>**MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. Lyndsey and Sharon Ballinger (Ballingers) bring this complaint against the City of Oakland (City) to challenge legislation (the Ordinance) that retroactively, illegally, and unconstitutionally requires rental property owners to pay thousands of dollars in "relocation" payments to tenants before the owners can repossess the property for their own use.

2. The Ballingers, both on Active Duty with the United States Air Force, rented their single-family home in Oakland when they were transferred from California to the Washington, D.C., area in 2015. Anticipating that they would return to the Bay area within three years, the Ballingers' lease agreement was set to end on

Complaint

September 30, 2017, at which time any remaining tenancy converted to a month-to-month agreement.

3. On January 16, 2018—after the Ballingers executed the lease agreement—the City enacted an ordinance which requires rental property owners to make payments to tenants before they can take their property off the rental market and use it for their own purposes.

4. When the Ballingers received orders from the Air Force to return to the Bay Area in January 2018 they gave their tenants proper notice that the existing month-to-month tenancy was about to end. At this time, the Ballingers discovered that they could not lawfully end the lease, under the terms of the new Ordinance, unless they paid the tenants more than $6,000 dollars. Although the Ordinance implies these payments are for purposes of tenant "relocation," the law actually allows benefitting tenants to take and use rental owner monies for any purpose they desire. With their return to California pending, the Ballingers had no choice but to pay the tenants $6,582.40—a substantial sacrifice for a young Bay-area family on a military salary.

5. The Ballingers now challenge the Ordinance and the tenant payments it mandates. The Ordinance is unconstitutional and illegal under the Takings Clause of the Fifth Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment, the Fourth Amendment, the Contract Clause of Article I, Section 10, and state law. The Ballingers are accordingly entitled to damages and equitable relief under 42 U.S.C. § 1983, the Constitution, and state law.

### THE PARTIES

6. Plaintiffs Lyndsey and Sharon Ballinger are individual citizens of the United States. They are married, and are domiciled and reside in, Oakland, California. The Ballingers own a single-family home located at 1685 MacArthur Blvd. As owners of a home that has been, and could be rented, they are subject to the Ordinance.

7. Defendant City of Oakland is a political subdivision of the State of California, and the local governing authority in Oakland. On January 16, 2018, the City enacted Article VIII, Relocation Payments for Owner or Relative Move-Ins, the Ordinance at issue in this lawsuit. The City is entitled to sue and be sued, and is constrained by the laws of the United States and the State of California, including the United States Constitution, 42 U.S.C. § 1983, and the Ellis Act.

## JURISDICTION AND VENUE

8. The claims in this action arise under the Fourth and Fifth Amendments to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Contract Clause of Article I, Section 10. The Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the Ellis Act claim under 28 U.S.C. § 1367. A remedy is sought under the Declaratory Judgment Act, 28 U.S.C. § 2201.

9. Venue is proper in this Court because this action concerns property located in Oakland, California, and the actions of the City of Oakland, all of which are within the jurisdiction of the Northern District of California.

## FACTS

**The Ellis Act and Ordinance at Issue**

10. Under California law, property owners have a right to remove their homes, buildings, and other property from the residential rental market when they wish. This right arises from the 1984 enactment of the Ellis Act. The Act provides, in part, that no public entity may "compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease, except for [certain] guestrooms or efficiency units within a residential hotel . . . ." Cal. Gov't Code § 7060(a).

///

///

Complaint 3

11. The Ellis Act also recognizes that local governments may seek to mitigate the impacts of the withdrawal of rental units from the market. It provides that "[n]otwithstanding Section 7060, nothing in this chapter . . . [d]iminishes or enhances any power in any public entity to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations." *Id.* § 7060.1.

12. On January 16, 2018, the City adopted an ordinance, codified as Oakland Municipal Code (OMC) Article VIII and entitled "Relocation Payments for Owner or Relative Move-Ins." Relevant portions of the Ordinance are attached as **Exhibit A** and its provisions are incorporated herein.

13. The Ordinance requires owners of rental property to make relocation payments to tenants before they can evict the tenants for the purpose of occupying the property themselves or to allow a relative to occupy the property. OMC § 8.22.850(A).

14. Tenants are entitled to a relocation payment of $6,500 per unit for studios and one-bedroom apartments, $8,000 per unit for two-bedroom apartments, and $9,875 per unit for units with three or more bedrooms. § 8.22.850(B), referencing § 8.22.820(A).

15. The amounts adjust for inflation annually on July 1. Through June 30, 2018, the required, inflation-adjusted payments amounts are: $6,875.58 per studio/one-bedroom unit; $8,462.26 per two-bedroom unit, and $10,445.60 per three- or more-bedroom unit.

16. Households in rental units that include lower income, elderly or disabled tenants, and/or minor children are entitled to a single additional relocation payment of $2,500 per unit. § 8.22.820(B).

17. Tenants are eligible for relocation payments of one-third of the total payment upon taking possession of the rental unit, two-thirds of the payment after one year of occupancy, and the full amount of the total payment after two years of occupancy. § 8.22.850(C).

///

18. The first half of the relocation payment must be paid when the termination notice is given, and the other half when the tenant vacates the property. § 8.22.850(D).

19. The Ordinance allows the City to provide zero-interest loans to assist some rental property owners with their relocation payments. Eligible property owners must have fewer than five units in the City, must qualify as low or moderate income, and meet other financial conditions outlined in the Ordinance. § 8.22.850(F).

20. Nothing in the Ordinance requires that the tenants use payments for relocation purposes. Rather, tenants are allowed to use the money for any personal purpose or desire.

21. Property owners are subject to criminal, administrative, and civil remedies if they do not comply with the requirements of the tenant relocation ordinance. §§ 8.22.860 & 8.22.870.

*The Ballingers and Their Property*

22. Sharon Ballinger is currently stationed at Travis Air Force Base, where she is a Nurse Practitioner at the base hospital medical center's ICU. Lyndsey Ballinger is transitioning from the D.C. Air National Guard to part time in the California Air National Guard. Lyndsey and Sharon have two young children.

23. The Ballingers own a three-bedroom, two-bathroom, single-family residence located at 1685 MacArthur Blvd. in Oakland.

24. In 2015, at which time both of them were active duty personnel in the United States Air Force, they received orders to transfer to the Washington, D.C., area.

25. Intending to return to the Bay Area, and to make it their permanent home, Plaintiffs decided to temporarily rent their house while on duty in the Washington, D.C., area.

26. On September 13, 2016, a young couple of software engineers signed a lease to rent the Ballingers' house. The Lease was for one year, after which it would

automatically switch to a month-to-month tenancy. The Lease is attached as **Exhibit B** and its provisions are incorporated herein.

27. In late 2017 the Ballingers received confirmation that they would be reassigned to the Bay Area in 2018.

28. On March 21, 2018, Plaintiffs' gave their tenants a notice to vacate the property by May 21, 2018, to allow the Ballingers to move back into their home soon thereafter. Pursuant to the Ordinance, the notice included a statement informing the tenants of their right to relocation payments and the amount of those payments. The Sixty Day Notice of Termination of Tenancy is attached as **Exhibit C** and its provisions are incorporated herein.

29. On the same day, the Ballingers paid the tenants half of the $6,582.40 "relocation" payment the Ordinance required them to make to the tenants.

30. The tenants vacated the home prior to the May 21, 2018, deadline, on April 20, 2018. At that point, the tenants had leased the home for approximately a year and a half.

31. When the tenants vacated their home, the Ballingers paid the remaining half of the payment due to the tenants under the Ordinance.

32. The Ordinance compelled the Ballingers to pay this amount before the tenants claimed or incurred any relocation costs and without any means to verify that they would use the money for legitimate "relocation" purposes.

**DECLARATORY RELIEF ALLEGATIONS**

33. Under the Fifth Amendment to the United States Constitution, the Ballingers have a federal right to be free from a taking of their private property for a private purpose, a right to be free from laws that take property for a public purpose, but without just compensation, and a right not to be subject to unconstitutional conditions on their ability to use, and rent, private property. Under the Due Process Clause of the Fourteenth Amendment, Plaintiffs also have a right to be free from an irrational and illegitimate deprivation of their property.

34. The Fourth Amendment protects the right to be free of unreasonable seizures, here the tenant payment provisions of the Ordinance. Additionally, under the Contract Clause (Article I, Section 10), governments are forbidden from interfering with the existing obligation of contracts.

35. Under state common law and the Ellis Act, Plaintiffs have a right to withdraw their property from the rental market, and to be free of any law that unreasonably and impermissibly burdens that state law property right so as to effectively force them to remain landlords.

36. Defendant has enacted, and is charged with enforcing, an Ordinance that retroactively and immediately takes private property for a private purpose and without a rational or a reasonable basis. To the extent the Ordinance serves a public purpose, it takes private property without compensation and imposes an unconstitutional condition and exaction on the lawful use of property.

37. There is a justiciable controversy in this case as to whether the Ordinance violates the Fourth, Fifth, and Fourteenth Amendments, the Contract Clause, and the Ellis Act, on its face and as applied to Plaintiffs.

38. A declaratory judgment as to whether the Ordinance unconstitutionally takes property, deprives individuals, including Plaintiffs, of their property, creates an illegal seizure, interferes with the obligation of contract, and/or violates the Ellis Act will clarify the legal relations between Plaintiffs and Defendant, with respect to enforcement of the Ordinance.

39. A declaratory judgment as to the constitutionality and legality of the Ordinance will give the parties relief from the uncertainty and insecurity giving rise to this controversy.

**INJUNCTIVE RELIEF ALLEGATIONS**

40. Plaintiffs have no adequate remedy at law to address the unlawful and unconstitutional taking and deprivation of the property effected by the Ordinance under color of state law.

41. There is a substantial likelihood that Plaintiffs will succeed on the merits of their claims that the Ordinance unconstitutionally deprives Plaintiffs of their property, violates due process, creates an illegal seizure, interferes with an obligation of contract, and violates the Ellis Act.

42. An injunction restraining Defendant from enforcing the confiscatory, unconstitutional, and illegal Ordinance on its face and as applied to Plaintiffs, will not impair, but rather enhance, the public interest.

## LEGAL CLAIMS

## FIRST CLAIM

### Taking of Private Property for a Private Purpose—Facial Claim Under 42 U.S.C. § 1983

43. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 42 as though fully set forth herein.

44. It is well established that, under the Public Use Clause of the Fifth Amendment to the Constitution, local governments may not take private property for a private purpose.

45. The Ordinance requires rental property owners such as Plaintiffs to transfer money to other private persons, namely, their tenants, when the owners exercise their right to withdraw units from the rent market under the Ellis Act.

46. The Ordinance provides that the City can provide a zero-interest loan to qualified rental property owners to satisfy their relocation payments. The necessity of such loans evidences the fact that relocation payments create a substantial burden on rental property owners.

47. The Ordinance does not place any limits or conditions on how the tenants may use the money that rental property owners, such as Plaintiffs, must transfer to the tenants under the Ordinance.

///

///

48. Tenants may use the money transferred to them by rental property owners for any private purpose whatsoever. There is no requirement that the tenants use the money for relocation or to pay rents.

49. The Ordinance benefits private persons, not the general public. The private benefit accruing to tenants from the Ordinance's tenant payment provisions far outweighs any conceivable incidental public benefit.

50. The Ordinance was intended to benefit private parties.

51. The Ordinance serves a private purpose and use and therefore violates the Public Use Clause of the Takings Clause of the Fifth Amendment.

52. The Public Use Clause violation arising from the Ordinance occurs under color of state law and violates 42 U.S.C. § 1983.

## SECOND CLAIM

**Unconstitutional Exaction of Private Property—
Facial and As-Applied Under 42 U.S.C. § 1983**

53. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 52 as though fully set forth herein.

54. The Ordinance conditions the exercise of a state law and common law property right—a property owner's right to take property off the rental market and to regain possession of it for personal, nonrental uses—on the payment of money to tenants.

55. Money is constitutionally protected property.

56. If Defendant had simply demanded that Plaintiffs hand over their money to displaced tenants, it would be liable for a per se unconstitutional physical taking of property.

57. Under *Nollan v. California Coastal Commission (Nollan)*, 483 U.S. 825 (1987), *Dolan v. City of Tigard (Dolan)*, 512 U.S. 374 (1994), and *Koontz v. St. Johns River Water Management District (Koontz)*, 570 U.S. 595 (2013), the government may

///

constitutionally exact money from property owners, such as Plaintiffs, as a condition of allowing the owners to exercise a property right only if:

    a. The exaction directly mitigates a public impact directly arising from the property owners' exercise of their property right; and

    b. The exaction is roughly proportionate in both nature and degree to the public impact arising from the property owners' exercise of the property right.

58. The tenant payment exaction imposed by the Ordinance on rental property owners withdrawing their units from the rental market, is not related to, and does not address, any impact arising from the property owners' exercise of their right to withdraw units from the rental market.

59. The monetary exaction imposed by the Ordinance is not proportionate in either nature or degree to any impact arising from the property owners' exercise of the right to withdraw units from the rental market.

60. The City, aware that the relocation payments would create a substantial burden on property owners, offers zero-interest loans to property owners to provide relocation payments to their tenants.

61. By requiring property owners, such as the Ballingers, to pay unrestricted and exorbitant sums to tenants as a condition of exercising their state law property right to remove their units from the rental market, the Ordinance imposes an unconstitutional condition and unconstitutionally exacts and takes private property.

62. The monetary exaction imposed by the Ordinance violates the constitutional principles articulated in *Nollan*, *Dolan*, and *Koontz*.

63. The unconstitutional monetary exaction arising from the Ordinance is imposed under color of state law and violates 42 U.S.C. § 1983.

64. The City has failed to pay the just compensation the Ballingers are entitled to as a result of the unconstitutional taking.

///

## THIRD CLAIM

### Unconstitutional Regulatory Taking—
### As-Applied Under 42 U.S.C. § 1983

65. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 64 as though fully set forth herein.

66. If the Ordinance does not amount to an unconstitutional exaction/condition as applied to the Ballingers, it causes a regulatory taking.

67. The Ordinance's demand that the Ballingers pay $6,582.40 has had a severe economic impact on their family.

68. The Ordinance interferes with the Ballingers' distinct investment-backed expectations, including their reasonable expectation that they would not be subject to tenant payment obligations that were not in effect when they rented the home and the parties signed the rental agreement.

69. The Ordinance requires the Ballingers to submit to either the confiscation of their money or the physical occupation of their property, and has the character of a taking as applied to them.

70. If the Ordinance does not violate the principles articulated in *Nollan*, *Dolan*, and *Koontz*, it causes a taking of the Ballingers' property under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978).

71. The unconstitutional taking of the Ballingers' property arising from the Ordinance occurs under color of state law and violates 42 U.S.C. § 1983.

72. The City has failed to pay the just compensation the Ballingers are entitled to as a result of the unconstitutional taking.

## FOURTH CLAIM

### Violation of Due Process—
### As-Applied Claim Under 42 U.S.C. § 1983

73. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs1 through 72 as though fully set forth herein.

74. Rental property owners have a statutory and common law property right to use and enjoy their property and to remove their property from the rental market when they so desire.

75. The Ordinance requires that rental property owners pay tenants money to regain possession of their property under the Ellis Act, but puts no conditions on tenants' use of the payments. Tenants need not use their payment for relocation or for rent.

76. The Ordinance applies retroactively to alter and damage the Ballingers' lease and their property rights.

77. The Ordinance was applied to the Ballingers even though they entered into a Lease prior to the enactment of the Ordinance and without any warning that doing so would subject them to an obligation to pay off tenants before they are able to withdraw their home from the rental market and re-occupy their property.

78. The effect of the Ordinance is to penalize the Ballingers for exercising their state law property right to remove their units from the rental market and to force them to keep such units on the market.

79. The Ordinance's tenant payment provisions do not rationally advance a legitimate government interest and are arbitrary.

80. The retroactive nature of the Ordinance is irrational, unfair, and illegitimate.

81. The due process violation arising from the Ordinance is occurring under color of state law and violates 42 U.S.C. § 1983.

### FIFTH CLAIM

**Unreasonable Seizure in Violation of the Fourth Amendment—
As-Applied Claim Under 42 U.S.C. § 1983**

82. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 81 as though fully set forth herein.

///

Complaint 12

83. The Ordinance required the Ballingers to pay their tenants $6,582.40 to leave the premises, and so that the Ballingers could move into their home.

84. The Ordinance was applied to the Ballingers, even though the Lease was signed prior to adoption of the Ordinance. The Lease contained no provision for a tenant relocation payment.

85. The Fourth Amendment applies in the civil context, and money is protected from unreasonable seizure.

86. The Ordinance interferes with the Ballingers' possessory interest in their property, including money and real property.

87. The tenant payment provisions of the Ordinance unreasonably seize the Ballingers' property.

88. The unreasonable seizure arising from the Ordinance occurred under color of state law and violates 42.U.S.C. § 1983.

89. Plaintiffs need not exhaust administrative remedies prior to bringing this claim.

## SIXTH CLAIM

**Interference with the Obligation of Contract—
As-Applied Claim Under 42 U.S.C. § 1983**

90. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 89 as though fully set forth herein.

91. Article I Section 10 of the United States Constitution forbids states from "impairing the Obligation of Contracts," and applies to both private and public contracts.

92. Neither the Ballingers nor the tenants negotiated regarding relocation payments in the event that the Ballingers would want to move back into their home.

93. The Lease agreement negotiated by the Ballingers and their tenants did not include a relocation clause or any other agreement concerning payments in the case of an eviction for any cause.

94. At the time that the contract was entered into, no provision of federal, state, or local law would have led either party to the contract to expect that the Ballingers would be required to pay a relocation payment.

95. The Ballingers and the tenants freely signed a contract that did not include a relocation payment.

96. Oakland's Ordinance applies retroactively to interfere with the Obligation of Contracts, in this case by imposing an extra-contractual obligation to pay $6,582.40 as the price of terminating the Lease.

97. The Ordinance arbitrarily, irrationally, and illegitimately interferes with and imposes unreasonable conditions on the Ballingers' existing contract.

98. Oakland's action arises under color of state law and its violation of the Contract Clause is actionable under Section 1983. *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003).

## SEVENTH CLAIM

### Violation of the Ellis Act (Cal. Gov't Code §§ 7060-7060.7)— As Applied to Plaintiffs

99. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 though 98 as though fully set forth herein.

100. California Government Code Section 7060(a) prohibits local governments from acting or legislating to prevent a landlord/property owner from withdrawing rental units from the rental market.

101. Under California state law, a local government prevents a property owner from withdrawing rental units, in violation of the Ellis Act, when it burdens the right to withdraw the unit with unreasonable and/or excessive conditions.

102. The Ordinance's tenant payment provisions constitute an unreasonable, excessive, and impermissible burden on the Ballingers' Ellis Act right to withdraw their rental home from the rental market.

///

103. The Ordinance is not in accord with California law as applied to the Ballingers.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for judgment from this Court as follows:

1. A declaratory judgment that the Ordinance violates the Public Use Clause of the Fifth Amendment on its face and is therefore invalid and unenforceable;

2. A declaratory judgment that the Ordinance violates *Nollan*, *Dolan*, and *Koontz* and the Unconstitutional Conditions doctrine on its face and as-applied to the Ballingers, and is therefore invalid and unenforceable;

3. A declaratory judgment that the Ordinance as applied to the Ballingers created a regulatory taking;

4. A declaratory judgment that the Ballingers have suffered an unconstitutional taking without just compensation;

5. A declaratory judgment that the Ordinance, as applied to the Ballingers, violates the Due Process Clause of the Fourteenth Amendment;

6. A declaratory judgment that the Ordinance, as applied to the Ballingers, violates the Fourth Amendment;

7. A declaratory judgment that the Ordinance, as applied to the Ballingers, violates Article I, Section 10, of the United States Constitution by impairing the obligation of contract;

8. A declaratory judgment that the Ordinance violates the Ellis Act as applied to the Ballingers;

9. A permanent injunction preventing Defendant from enforcing or taking further action to enforce the Ordinance on its face;

10. An award of economic damages and compensatory damages (just compensation) equal to the relocation payments that the Ballingers were required to pay in addition to all other costs that the Ballingers incurred;

///

11. An award to the Ballingers of reasonable attorneys' fees and expert fees for bringing and maintaining this action, including under 42 U.S.C. § 1988;

12. An award to the Ballingers of costs of suit pursuant to Federal Rule of Civil Procedure 54(d); and

13. An award to the Ballingers of any other and further relief that the Court deems just and proper under the circumstances of this case.

DATED: November 28, 2018.

    Respectfully submitted,

    MERIEM L. HUBBARD
    J. DAVID BREEMER

    By s/ Meriem L. Hubbard
        MERIEM L. HUBBARD

    Attorneys for Plaintiffs Lyndsey Ballinger and Sharon Ballinger

Complaint      16