# EXHIBIT B

# LEASE AGREEMENT

THIS AGREEMENT is made and entered into this __13__ day of __September__ __2016__ between __Lyndsey Ballinger, Sharon Ballinger__ "**Owner**/Agent", whose address and phone number are __1600 MacArthur Blvd, Oakland CA 94602__    Office: 510-250-7918    Maintenance: 510-488-4435,

and __Andrew Merski, Heidi Schott__ "Resident."

THE PARTIES AGREE AS FOLLOWS:

1. **RENTAL UNIT:** Subject to the terms and conditions of this Agreement, Owner rents to Resident and Resident rents from Owner, for residential use only,

    the premises located at: __1685 MacArthur Blvd__, Unit # (if applicable) __N/A__,

    __Oakland__ CA, __94602__
    (Zip)

2. **RENT:** Rent is due in advance on the __1st__ day of each and every month, at $__3395.00__ per month, beginning on __10/1/2016__, payable to Owner/**Agent** at __1600 MacArthur Blvd, Oakland CA 94602__

    Payments made in person may be delivered to Owner/**Agent** between the hours of __12:00AM__ and __11:59PM__ on the following days of the week:
    ☑ Monday ☑ Tuesday ☑ Wednesday ☑Thursday ☑ Friday ☑ Saturday ☑ Sunday ☐ Other __N/A__

    Acceptable methods of payment:
    ☑ Personal Check  ☑ Cashier's Check  ☑ Money Order  ☐ EFT/Credit (see Owner/Agent for details) and ☐ Cash

    If rent is paid after the __1st__ of the month, there will be a late charge of $__75.00__ assessed. The parties agree that this late fee is presumed to be the amount of damage sustained by late payment of rent. It would be impracticable or extremely difficult to fix the actual damage. This sum represents a reasonable endeavor by the Owner/Agent to estimate fair average compensation for any loss that may be sustained as a result of late payment of rent. Pursuant to California law, if Resident passes a check on insufficient funds, Resident will be liable to Owner/Agent for the amount of the check and a service charge of $ __25.00__, not to exceed $25 for the first check passed on insufficient funds, and $35 for each subsequent check passed on insufficient funds. The Owner/Agent may refuse a personal check as the form of rent payment to cure a Three-Day Notice to Pay Rent or Quit.

    Owner may apply any payment made by Tenant to any obligation of Tenant to Owner notwithstanding any dates or other direction from Tenant that accompanies any such payment. Any attempt by Tenant to allocate a payment in any other way shall be null and void, including the use or application of a restrictive endorsement on the face of any check.

3. **SECURITY DEPOSIT:** Resident shall deposit with Owner/Agent, as a security deposit, the sum of $__3395.00__

    ☑ prior to taking possession of the unit **or** ☐ no later than __N/A__ (check one).

    Resident shall not use the security deposit to pay any month's rent. Owner/Agent may withhold from the security deposit only such amounts as are reasonably necessary to remedy Resident defaults including, but not limited to, the following:
    (a) defaults in the payment of rent,
    (b) to repair damages to the premises caused by Resident, exclusive of ordinary wear and tear, and/or
    (c) to clean the premises, if necessary, upon termination of the tenancy in order to return the unit to the same level of cleanliness it was in at the inception of the tenancy, and/or
    (d) to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear.

    No later than 21 calendar days after Owner/Agent has regained possession of the premises, Owner/Agent shall return any remaining portion of such security deposit to Resident. Any remaining portion of the security deposit shall be returned in the



California Apartment Association Approved Form
www.caanet.org
**Form 2.1** – Revised 12/12 - ©2012 – All Rights Reserved

**Unauthorized Reproduction of Blank Forms is Illegal.**



terminate the tenancy, the Owner/Agent and Resident may mutually agree to have the Owner/Agent deposit any remaining portion of the security deposit electronically to a bank account or other financial institution designated by the Resident or to another form or method of return.

4. **TERM:** The term of this Agreement is for __1 Year__, beginning on __10/1/2016__ and ending on __9/30/2017__, at which time this Lease shall terminate without further notice. Any holding over thereafter shall result in Resident being liable to Owner/Agent for daily rental damages equal to the current market value of the unit, divided by 30. A "month-to-month" tenancy subject to the terms and conditions of this agreement shall be created only if Owner/Agent accepts rent from Resident thereafter, and if so accepted, tenancy may be terminated by Resident after service upon the Owner/Agent of a written 30-day Notice of Termination. Except as prohibited by law, that month-to-month tenancy may be terminated by the Owner/Agent by service upon the Resident of a written 60-day notice of termination of tenancy. However, Civil Code Section 1946.1 provides that "if any tenant or resident has resided in the dwelling for less than one year", the Owner/Agent may terminate the tenancy by service upon the Resident of a written 30-day notice.

5. **UTILITIES:** Resident shall pay for all utilities, services and charges, if any, made payable by or predicated upon occupancy of Resident, **except**: __Trash__
Resident shall have the following utilities connected at all times during the tenancy (check as applicable):
☑Gas ☑Electric ☑Water ☐Trash ☑Sewer ☐Other: __N/A__

Disconnection of utilities due to non-payment is a material violation of this Agreement.

Resident shall not use common area utilities (such as water or electricity) for the Resident's personal use, without prior written permission from the Owner/Agent.

6. **CASH PAYMENT:** The Owner/Agent may demand or require cash as the exclusive form of payment of rent or security deposit if the Resident has previously attempted to pay the Owner/Agent with a check drawn on insufficient funds or the Resident has stopped payment on a check, draft, or money order. If the Owner/Agent chooses to demand or require cash payment under these circumstances, the Owner/Agent shall give the Resident a written notice stating that the payment instrument was dishonored and informing the Resident that the Resident shall pay in cash for a period determined by Owner/Agent, not to exceed three months, and attach a copy of the dishonored instrument to the notice.

7. **OCCUPANTS:** Premises shall be occupied only by the following named person(s):

| Name | Birthdate | Name | Birthdate |
|---|---|---|---|
| Andrew Merski | 11/13/1985 | Heidi Schott | 6/23/1987 |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

8. **PROHIBITIONS:** Without Owner/Agent's prior written permission as an addendum to this Agreement, no pets, waterbeds, charcoal burners or other open-flame cooking devices, or liquefied petroleum gas fueled cooking devices ("grills") or

__N/A__ shall be kept or allowed in or about the premises.

9. **SMOKING PROHIBITION:** Smoking of tobacco products is prohibited everywhere on the premises, including in individual units and interior and exterior common areas.

Resident shall inform his or her guest(s) of this Smoking Prohibition. Resident shall promptly notify Owner/Agent in writing of any incident where tobacco smoke is migrating into Resident's unit from sources outside of Resident's unit. Resident acknowledges that Owner/Agent's adoption of this policy, does not make the Owner/Agent the guarantor of the Resident's health or of the smoke-free condition of the areas listed above. However, Owner/Agent shall take reasonable steps to enforce this provision. Owner/Agent shall not be required to take steps in response to smoking unless Owner/Agent has actual knowledge or has been provided written notice. Owner/Agent and Resident agree that the other residents of the property are the third party beneficiaries of this provision. A resident may sue another resident to enforce this provision but does not have the right to evict another resident. Any lawsuit between residents regarding this provision shall not create a presumption that





**Unauthorized Reproduction of Blank Forms is Illegal.**



the Owner/Agent has ceased this Agreement. A breach of this provision by the Resident shall be deemed a material breach of the Rental/Lease Agreement and grounds for immediate termination of the Rental/Lease Agreement by the Owner/Agent.

10. **INDEMNIFICATION:** Landlord shall not be liable for any damage or injury to Resident(s), or any other Person, or to any property which may exist on the Premises or any part thereof or in the common area of which the Premises are a part, unless such damage is the proximate result of the negligence or unlawful act of the Owner/Agent or the Owner/Agent's agents or employees.

11. **QUIET ENJOYMENT:** Resident and Resident's guest(s) shall not violate any criminal or civil law, ordinance or statute in the use and occupancy of the premises, commit waste or nuisance, annoy, molest or interfere with any other person on the property, or neighbor. Any such action may result in the immediate termination of this Agreement as provided herein and by law.

12. **FINES AND PENALTIES:** Resident is responsible for any fines or other costs occasioned by violations of the law by Resident or Resident's guests on the premises or property while Resident is in possession. If any such fines or costs are levied against Owner/Agent, Resident agrees to pay such fines or costs attributed to Resident's tenancy or the conduct of Resident, Resident's guests or others at the premises, upon receipt of an invoice from Owner/Agent. The obligation to pay fines and costs assessed against Owner/Agent may be in addition to any assessed directly against Resident.

13. **REPAIRS AND ALTERATIONS:** Resident shall make a written request to Owner/Agent regarding any repairs, decorations or alterations contemplated. Except as provided by law, no repairs, decorating or alterations shall be done by Resident without Owner/Agent's prior written consent. This includes, but is not limited to, painting, wallpapering, and changing locks. Resident may not make any alterations to cable or telephone inside wiring (such as may occur when changing telecommunications providers or adding phone lines) without prior written consent of the Owner/Agent. The consent request regarding proposed alterations to inside wiring shall include the name, address, and telephone number of any new telecommunications providers. Resident agrees to pay all costs resulting from the alteration and agrees to pay to the Owner/Agent any costs associated with restoring the inside wiring to the condition at the time of move-in, except for reasonable wear and tear. Resident shall hold Owner/Agent harmless and indemnify Owner/Agent as to any mechanic's lien recordation or proceeding caused by Resident.

14. **ACCEPTANCE OF PREMISES:** Resident has inspected the premises, furnishings and equipment, and has found them to be satisfactory. All plumbing, heating and electrical systems are operative and deemed satisfactory.

15. **CARE, CLEANING AND MAINTENANCE:** Except as prohibited by law, Resident agrees:

    (a) to keep the premises as clean and sanitary as their condition permits and to dispose of all rubbish, garbage and other waste, in a clean and sanitary manner, unless Owner/Agent has expressly agreed otherwise in writing in an addendum to this Agreement;
    (b) to properly use and operate all electrical, gas and plumbing fixtures and keep them as clean and sanitary as their condition permits;
    (c) to keep the premises and furniture, furnishings and appliances, and fixtures, which are rented for Resident's exclusive use, in good order and condition;
    (d) not to willfully or wantonly destroy, deface, damage, impair or remove any part of the structure or dwelling unit or the facilities, equipment, or appurtenances thereto or to permit any person on the premises, to do any such thing;
    (e) to occupy the premises as a residence, utilizing portions thereof for living, sleeping, cooking or dining purposes only which were respectively designed or intended to be used for such purposes.
    (f) to leave the premises in the same condition as it was received, subject to normal wear and tear, as its condition permits.
    (g) to return the premises, upon move-out to the same level of cleanliness it was in at the inception of the tenancy.
    (h) to pay Owner/Agent for costs to repair, replace or rebuild any portion of the premises damaged by the Resident, Resident's guests or invitees.
    (i) to promptly advise Owner/Agent of any items requiring repair, such as light switches or dripping faucets. Resident shall make repair requests as soon after the defect is noted as is practical.

16. **LANDSCAPING:** Resident ☐ is ☒ is not (check one) responsible for the upkeep of the yard and maintenance of the landscaping, including watering, mowing, weeding and clipping, or ☐ please see attached Addendum. Resident shall promptly advise Owner/Agent of any problems with the landscaping, including, but not limited to, dead grass, plants or tree limbs, insect infestations, discolored or yellowing foliage and insufficient irrigation or leaks. Resident may not delegate the responsibilities of this paragraph to any person, including a contractor or other landscaping professional.



*California Apartment Association Approved Form*
www.caanet.org
**Form 2.1** – Revised 12/12 - ©2012 – All Rights Reserved

**Unauthorized Reproduction of Blank Forms is Illegal.**



17. **SMOKE DETECTION DEVICE:** The premises are equipped with a functioning smoke detection device(s), and Resident shall be responsible for testing the device weekly and immediately reporting any problems, maintenance or need for repairs to Owner/Agent. If battery operated, Resident is responsible for changing the detector's battery as necessary. Resident may not disable, disconnect or remove the detector. Owner/Agent shall have a right to enter the premises to check and maintain the smoke detection device as provided by law.

18. **CARBON MONOXIDE DETECTION DEVICE:** If the premises are equipped with a functioning carbon monoxide detection device(s), Resident shall be responsible for testing the device weekly and immediately reporting any problems, maintenance or need for repairs to Owner/Agent. If battery operated, Resident is responsible for changing the detector's battery as necessary. Resident may not disable, disconnect or remove the detector. Owner/Agent shall have a right to enter the premises to check and maintain the carbon monoxide detection device as provided by law.

19. **RENTERS INSURANCE:** Resident's property is not insured by Owner/Agent. Resident is not a co-insured and is expressly excluded from coverage under any insurance policy held by Owner/Agent which is now in effect or becomes effective during the term of this Agreement. (CHECK ONE BOX)

    ☐ Resident is required to maintain renters insurance throughout the duration of the tenancy as specified in the attached Renters Insurance Addendum. Resident must provide proof of such insurance to the Owner/Agent:

    ☐ within 30 days of the inception of the tenancy.

    ☐ prior to occupancy.

    ☐ by _____ N/A _____

    Failure to comply with this requirement is a material violation of the Rental/Lease Agreement.

    ☐ Resident is encouraged but not required to obtain renters insurance.

20. **WAIVER OF BREACH:** The waiver by either party of any breach shall not be construed to be a continuing waiver of any subsequent breach. The receipt by Owner/Agent of the rent with the knowledge of any violation of a covenant or condition of this agreement shall not be deemed a waiver of such breach. No waiver by either party of the provisions herein shall be deemed to have been made unless expressed in writing and signed by all parties to this Agreement.

21. **JOINT AND SEVERAL LIABILITY:** The undersigned Resident(s), whether or not in actual possession of the premises, are jointly and severally liable for all obligations under this Agreement and shall indemnify Owner/Agent for liability arising prior to the return of possession to the Owner/Agent for personal injuries or property damage caused or permitted by Resident(s), their guests, and invitees. This does not waive "Owner/Agent's duty of care" to prevent personal injury or property damage where that duty is imposed by law.

22. **ENTRY:** California law allows Owner/Agent or his/her employee(s) to enter the premises for certain purposes during normal business hours. The Owner/Agent will provide written notice to the Resident prior to the entry of the dwelling unit whenever required by state law. (Civil Code Section 1954.) Resident's non-compliance with Owner/Agent's lawful request for entry is a material breach of this Agreement that may be cause for immediate termination as provided herein and by law.

23. **SUBLETTING AND ASSIGNMENT:** No portion of the premises shall be sublet nor this Agreement assigned. Any attempted subletting or assignment by Resident shall, at the election of Owner/Agent, be an irremediable breach of this Agreement and cause for immediate termination as provided herein and by law.

24. **BREACH OF LEASE:** In the event that Resident breaches this Lease Agreement, Owner/Agent shall be allowed at Owner/Agent's discretion, but not by way of limitation, to exercise any or all remedies provided Owner/Agent by California Civil Code Section 1951.2 and 1951.4. Damages Owner/Agent "may recover" include the worth at the time of the award of the amount by which the unpaid rent for the balance of the term after the time of award, or for any shorter period of time specified in the Lease Agreement, exceeds the amount of such rental loss for the same period that the Resident proves could be reasonably avoided.

25. **SALE OF PROPERTY:** In the event of the sale or refinance of the property: If Owner/Agent presents to Resident a "Resident's Certification of Terms - Estoppel Certification," or other similar Estoppel Certification form, Resident agrees to execute and deliver the certificate acknowledging that this Agreement is unmodified and in full force and effect, or in full force



*California Apartment Association Approved Form*
*www.caanet.org*
**Form 2.1** – Revised 12/12 – ©2012 – All Rights Reserved

**Unauthorized Reproduction of Blank Forms is Illegal.**



and effect as modified with the consent of Owner/Agent, and stating the modifications within ten (10) days of written notice. Failure to comply shall be deemed Resident's acknowledgement that the certificate as submitted by Owner/Agent is true and correct and may be relied upon by any lender or purchaser.

26. **NOTICE:** Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

27. **ADDENDA:** By initialing as provided below, Resident(s) acknowledge receipt of the following applicable addenda (as checked), copies of which are attached hereto and are incorporated as part of this Agreement.

    - ☐ Itemized Costs for Rental Unit
    - ☐ Key Inventory
    - ☐ Asbestos Addendum
    - ☐ Bedbug Addendum
    - ☐ CC&Rs Addendum
    - ☐ Carbon Monoxide Detector
    - ☐ Grilling Addendum
    - ☐ Guarantee of Rental/Lease Agreement
    - ☐ Key Addendum
    - ☐ Lead-Based Paint Addendum
    - ☐ Mold Notification Addendum
    - ☐ Pet Addendum
    - ☐ Political Signs Addendum
    - ☐ Renters Insurance Addendum
    - ☑ Resident Policies Addendum
    - ☑ Satellite Dish and Antenna Addendum
    - ☑ Smoke Detector Addendum
    - ☑ Termination of Rental Agreement Addendum
    - ☑ Unlawful Activity Addendum
    - ☑ Additional Provisions Addendum
    - ☐ Oakland Rent Adjustment Program Notice
    - ☑ Spare the Air Addendum
    - ☑ Ants Awareness Notification
    - ☑ EPA Lead Safety Pamphlet
    - ☑ Emergency Procedure Information for Tenants
    - ☑ Proposition 65 Brochure

    Resident(s) initials here: _ASM_ _HS_

28. **ENTIRE AGREEMENT:** This Agreement, which includes all attachments referred to above, constitutes the entire Agreement between the parties and cannot be modified except in writing and signed by all parties, except as permitted by applicable law. Neither Owner/Agent, nor any agent or employee of Owner/Agent has made any representations or promises other than those set forth herein.

29. **CREDIT REPORTS:** A negative credit report reflecting on your credit history may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. Resident expressly authorizes Owner/Agent (including a collection agency) to obtain Resident's consumer credit report, which Owner/Agent may use if attempting to collect past due rent payments, late fees, or other charges from Resident, both during the term of the Agreement and thereafter.

30. **ATTORNEYS' FEES:** If any legal action or proceeding is brought by either party to enforce any part of this Agreement, the prevailing party shall recover, in addition to all other relief, reasonable attorneys' fees and court costs, unless one of the following two boxes is checked:
    ☐ the prevailing party shall recover, in addition to all other relief, attorneys' fees not to exceed $_____, plus court costs.
    Or
    ☑ each party shall be responsible for their own attorneys' fees and court costs.

The undersigned Resident(s) acknowledge(s) having read and understood the foregoing, and receipt of a duplicate original.

**Signature:** _Andrew Merski_
Andrew Merski (Sep 13, 2016)
**Email:** andrewmerski@gmail.com

**Signature:** _Heidi Schott_
Heidi Schott (Sep 13, 2016)
**Email:** heidi.l.schott@gmail.com

**Signature:** _Darryl Glass_
**Email:** pm@adventpropertiesinc.com

# Itemized Rental Unit Costs

**Address:** 1685 MacArthur Blvd

**Resident(s):** Andrew Merski, Heidi Schott

**Lease effective:** 10/1/2016   **Lease Expires:** 9/30/2017   **Move in:** 10/1/2016

## Monthly Costs

| | |
|---|---:|
| 1. Total rent each month: | 1. 3395.00 |
| 2. Total water each month (if applicable): | 2. 0.00 |
| 3. Total garbage each month (if applicable): | 3. 0.00 |
| 4. Total PG&E each month (if applicable): | 4. 0.00 |
| 5. Total parking fee each month (if applicable: | 5. 0.00 |
| 6. Total yard maintenance fee each month (if applicable): | 6. 0.00 |
| 7. Total ___N/A___ fee each month (if applicable): | 7. 0.00 |
| **Total Due each month:** | **3395.00** |

## Move in Costs

| | |
|---|---:|
| 1. Rent (prorated, if applicable): | 1. 3395.00 |
| 2. Other rent (if applicable): | 2. 0.00 |
| 3. Water, prorated (if applicable): | 3. 0.00 |
| 4. Garbage, prorated (if applicable): | 4. 0.00 |
| 5. PG&E, prorated (if applicable): | 5. 0.00 |
| 6. Parking, prorated (if applicable) | 6. 0.00 |
| 7. Yard maintenance, prorated (if applicable): | 7. 0.00 |
| **Subtotal 1:** | **Subtotal 1:** 3395.00 |
| Deposit paid on: ___9/20/2016___ | Deposit paid on: 3395.00 |
| **Subtotal 2:** | **Subtotal 2:** 6790.00 |
| Less deposit paid: | Less deposit paid: -3395.00 |
| **Total Due at Move In:** | **Total Due at Move In:** 3395.00 |

Walk-through date: ___10/1/2016___ Time: ___TBA___

Please note that deposit(s) is/are required to be paid on or before lease is physically signed. If e-signing, payment is due within 72 hours. The only acceptable forms of payment are: **Cashier's Check or Money Order made out to Advent Properties Inc.**

Remaining move in costs must be paid on or before Move In. Any required utilities service must be active and account numbers on file with management prior to Move In.

The undersigned Resident(s) acknowledge(s) having read and understood the foregoing.

**Signature:** *Andrew Merski*
Andrew Merski (Sep 13, 2016)
**Email:** andrewmerski@gmail.com

**Signature:** *Heidi Schott*
Heidi Schott (Sep 13, 2016)
**Email:** heidi.l.schott@gmail.com

**Signature:** *Daryl Glass*
**Email:** pm@adventpropertiesinc.com

This document is an Addendum and is part of the Rental/Lease Agreement, dated __11/23/2015__ between

__Advent Properties Inc.__ (Owner/Agent) and

__Andrew Merski, Heidi Schott__ (Resident) for the

premises located at __1685 MacArthur Blvd__, Unit # (if applicable) __N/A__

__Oakland__, CA __94602__.

Resident(s) acknowledge that in the case of a fixed-term lease, the Resident(s) cannot terminate a contract until expiration date and is responsible for rent for the term of the lease. In the case of month-to-month tenancy, agreement may be terminated by the submission of a completed and signed THIRTY-DAY NOTICE OF RESIDENT(S) INTENT TO VACATE.

Resident(s) must receive written confirmation from Management acknowledging receipt of notice. If written confirmation is not received by the Resident(s) then Management has not received the NOTICE TO VACATE and the Resident(s) will be held accountable for all lease requirements until proper notice is received and acknowledged.

Resident(s) is/are responsible for rent for thirty (30) days after submitting notice even if residence is vacated earlier.

As conditions for such termination, and prior return of any deposit, Resident(s) shall do the following: completely vacate the premises - including any storage or other area of the general premises which the Resident(s) may be occupying or in which Resident may have goods stored; remove all vehicles; deliver all keys; return all property furnished for the Resident(s) for use during the term of this agreement to Management in good and clean condition, reasonable wear and tear excepted; and return the unit to the state of cleanliness it was at move-in. Resident(s) shall provide proper forwarding address.

Resident(s) shall be responsible for any damages that Management may sustain from Resident(s) failure to vacate premises as agreed.

**Signature:** *Andrew Merski*
Andrew Merski (Sep 13, 2016)
**Email:** andrewmerski@gmail.com

**Signature:** *Heidi Schott*
Heidi Schott (Sep 13, 2016)
**Email:** heidi.l.schott@gmail.com

**Signature:** *Darryl Glass*
**Email:** pm@adventpropertiesinc.com